Date signed April 13, 2011



**THOMAS J. CATLIOTA**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### Greenbelt Division

In re:

| | | |
|---|---|---|
| John David Nims, | * | Case No. 11-15968-TJC |
| | * | |
| | * | |
| Debtor | * | Chapter 13 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| | * |
| Carol A. Flaherty, | * |
| | * |
| Movant | * |
| v. | * |
| | * |
| John David Nims and | * |
| Nancy Spencer Grigsby, Trustee | * |
| | * |
| Respondents | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### Memorandum of Decision

Before the Court is the emergency motion by the Movant Carol Flaherty ("Movant") for

relief from automatic stay (the "Motion") and memorandum in support of opposition thereto and

the amended answer filed by John David Nims (the "Debtor").  The Court entered a scheduling

1

order in this contested matter on April 7, 2011 and held a hearing on April 12, 2011. The Movant seeks relief from the automatic stay to allow a trustee, appointed by the Circuit Court of Calvert County (the "Circuit Court") to sell real property co-owned by the Movant and the Debtor in proceedings initiated more than eighteen months ago, to consummate the sale of the property as ratified by the Circuit Court.

The Court has reviewed the parties' filings and considered the evidence and the arguments presented at the hearing. For the reasons set forth herein, the Court will grant the Motion and allow the parties to return to the Circuit Court for further proceedings as that court deems appropriate, including consummating the sale of the property at issue herein and resolving the Debtor's motion for contribution. The Court, however, will require that the Circuit Court trustee must deliver any net proceeds from the sale of the property due to the Debtor, taking into account any resolution of the Debtor's motion for contribution, to the Chapter 13 trustee for administration and distribution in this bankruptcy case.

## FINDINGS OF FACT

The Movant is the former spouse of the Debtor. The parties were divorced on June 16, 2008 as a result of a divorce proceeding in the Circuit Court, Case No. 04C08000281.

During their marriage, the Debtor and Movant acquired as tenants by the entirety a parcel of real property located at 2915 Jalaber Lane, Huntingtown, Maryland, 20369 (the "Property"). As a result of their divorce, the Movant and the Debtor own the Property as tenants in common.

The Debtor's Schedule A values the Property at $728,000.00. The Debtor's Schedule D lists a first deed of trust loan held by Wells Fargo in the amount of $222,995.00 and a second deed of trust loan held by Chase in the amount of $25,779.00. According to Schedule D, the total payoff of the first and second deeds of trust on the Property is $248,774.00.

2

On July 7, 2009, the Movant filed a complaint for partition in the Circuit Court, initiating Case No. C099290C, seeking to have the Circuit Court partition or sell the Property (the "Partition Action"). The Debtor was served with the complaint initiating the Partition Action. After a hearing on October 22, 2009, the Circuit Court found "as a fact" that the Property was not susceptible to partition, and entered an order (the "Sale Order") appointing Richard Lloyd as trustee (the "Trustee") and ordering the Trustee to sell the Property. The Circuit Court specifically ordered as follows:

> ORDERED, ADJUDGED AND DECREED that should the Trustee, within 30 days of this Order, not enter into a contract to sell the subject property at a price deemed acceptable by the Trustee, said contract being subject to ratification by this Court, then in that event the Trustee shall list the subject property for sale with a realtor agreed upon by the Trustee at a price to be determined by the Trustee, said listing agreement shall be for a period of no less than six months…

Sale Order at 1. The Trustee represented the Movant in filing the Partition Action, but has not represented the Movant since being appointed as the Trustee.

Before listing the Property for sale, the Trustee contacted the Debtor to determine if the Debtor desired to buy the Movant's interest in the Property in lieu of a sale. The Debtor did not express any interest in doing so.

The Trustee had the Property listed for sale through a real estate agent in May 2010. The initial listing price was $565,000. This price was determined by the Trustee as appropriate based on conversations with the real estate agent, other real estate professionals, the tax assessment on the Property and comparable sales.

The Debtor refused to cooperate with the Trustee's efforts to sell the Property. The Debtor has made the process of listing, showing and selling the Property very difficult. The Debtor has tried in "every possible way" to avoid having the Property sold and to interfere with

the Trustee's ability to sell the Property.  On two occasions, the Trustee was required to go to the Circuit Court to obtain the Debtor's compliance, and once obtained a contempt order against the Debtor.

The Property was marketed until the Trustee obtained a contract in January 2011.  The listing price was reduced several times during the ensuing eight months because of lack of any offers at the list price.  The Property was scheduled for showing some 15-20 times.  However not all showings occurred.  Several were cancelled because of the Debtor's refusal to cooperate in allowing the prospective buyers to see the Property.  At other times the Debtor would be cooking breakfast or sleeping when the showing was scheduled.  But at least 12-13 showings were held at the Property and no offers came from those showings.

No offers were received on the Property until one leading to the Trustee's execution of a residential contract for sale (the "Contract") on January 24, 2011.  The Contract has a purchase price of $440,000 and provides $13,200 assistance from the seller.  Closing on the Contract is scheduled for April 15, 2011.  Several open items remain before closing, all of which, insofar as the Trustee is aware, are related to the Debtor's refusal to vacate the Property or otherwise make it available for inspection.

The Trustee filed a motion to ratify the Contract in the Partition Action.  The Circuit Court held a hearing on the motion.  The Debtor personally did not appear but his counsel appeared on his behalf.  Although his counsel disagreed with the purchase price, he did not object to the Trustee's appointment, the sales process or the marketing efforts of the Trustee.  By order signed on February 16, 2011, the Circuit Court ratified the Contract (the "Sale Ratification Order").

4

The Debtor refused to vacate the Property in anticipation of the sale.  On February 28, 2011, the Trustee filed a motion for possession of the Property in the Partition Action.  The Debtor filed the instant case under Chapter 13 on March 23, 2011.  Thereafter on March 24, 2011, the Circuit Court signed a judgment for possession.  No party disputed that the judgment of possession, entered after the bankruptcy filing, is void in violation of the automatic stay.

Prior to that date, on March 14, 2011, the Debtor filed a motion for contribution (the "Contribution Motion") in the Circuit Court seeking credit for mortgage payments made by him on the Property.  The Contribution Motion is pending.

The Debtor did not participate in the Partition Action directly, other than on a limited basis through counsel, because he "did not think they would sell the [Property]. [He] did not think they would give the [Property] away."

The Debtor testified that he runs his business out of the Property.  By that he means he uses two offices there to design and bids for his work and fulfill his other office duties.

 The first deed of trust loan is currently in default for failure to make the January, February and March payments. The second deed of trust loan is currently in default for failure to make the March payment.  The first and second deed of trust loans against the Property are joint obligations of the Movant and Debtor.  The Movant cannot refinance her existing home because of the existence and status of the first and second deed of trust loans against the Property.  Her credit rating has suffered because of the lack of payments on those loans.

The Debtor testified that he believes the value of the Property is $728,000 based on some internet searches, talking to real estate professionals and reviewing some comparable sales.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

As of the date a bankruptcy petition is filed, most actions against a debtor commenced before the filing of the petition are automatically stayed. 11 U.S.C. § 362(a)(1).[1] Section 362(d)(1) provides that the court shall grant relief from the automatic stay "for cause," including lack of adequate protection. The Code, however, provides no definition of what constitutes "cause," so courts must determine whether relief is appropriate on a case-by-case basis. *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992). "The court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *Id.*

A motion seeking relief from stay to continue a state court action is governed here by *Robbins.* In *Robbins,* the Court set forth factors for a bankruptcy court to consider in determining whether cause exists to grant relief from the automatic stay:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court. *Id.*

In *Robbins,* Mr. and Mrs. Robbins were divorced in October of 1988. The divorce decree divided their marital property under Florida equitable distribution law. The most valuable asset

---

[1] All statutory references herein are to the Bankruptcy Code, 11 U.S.C. §101 *et seq*., as currently in effect.

of the Robbins' was stock in a closely corporation that owned an amusement park and had sizeable real estate holdings.  The Florida trial court valued the stock at the time of the divorce at $4 million and ordered that Mr. Robbins grant Mrs. Robbins an undivided half interest in the stock.  However, the Florida Court of Appeals reversed, ruling that Mrs. Robbins was instead entitled to the cash value of her share of the marital stock.  The case was then remanded to allow the trial court to provide Mrs. Robbins with the stock's cash value.

In lieu of a trial on remand, the parties agreed that a special master could hear the issue. The special master issued a report that Mrs. Robbins was entitled to the cash value of her stock at the time of the divorce, $2 million, plus interest.  Mrs. Robbins was also to be granted a lien on the stock to secure performance.  Mr. Robbins filed for bankruptcy relief just as a Florida trial court was about to enter the master's judgment.  Mrs. Robbins moved to lift the stay to allow the state court proceedings to continue to their conclusion.

Applying the above cited factors, the bankruptcy court lifted the stay to allow the equitable distribution proceedings to go forward in state court while the bankruptcy court protected the estate by retaining jurisdiction and "determining the rights of creditors to any of its property once the Florida distribution became final."  *Robbins*, 964 F.2d at 344.  The District Court for the Western District of North Carolina and the Fourth Circuit affirmed.  The Fourth Circuit affirmed the bankruptcy court's determination that the equitable distribution dispute at issue is a category of cases in which state courts have special expertise and for which federal courts should give deference; that lifting the stay would promote judicial economy; and finally that granting relief from the stay would not harm the interests of other creditors or the estate.  *Id.*

Applying the *Robbins* factors here, the Court concludes that the stay should be lifted to allow the Partition Action and the Contribution Motion to be resolved in Circuit Court.  The

7

issues involve only state law, so that the expertise of the bankruptcy court is not necessary. Specifically, Movant holds a one-half ownership interest in the Property, which interest is not property of the estate. She seeks to have the Property sold so that she can realize the economic benefit from her ownership interest. She also seeks to be relieved of her obligations under the deed of trust loans against the Property, which obligations cause her financial difficulties. Debtor contends that Movant holds only a claim in the bankruptcy case and Debtor can pay that claim over time in accordance with a plan. But no authority cited by Debtor allows him to force a tenant in common to sell her interest in property through a bankruptcy plan. That is especially the case here, since the Debtor's forced buyout, even if feasible, would not relieve the Movant of her obligations on the deed of trust loans and therefore would continue to cause her harm.

Further, the Partition Action has been pending for over eighteen months and is very close to final resolution. The Circuit Court has appointed the Trustee to sell the Property, ratified the Contract, and entered the judgment of possession. The sale is scheduled to close in three days. The Debtor has filed the Contribution Motion in the Circuit Court and that proceeding is underway. Judicial economy is promoted by allowing that matter to run its course.

Finally, the estate can be protected by requiring the Trustee to deliver to the Chapter 13 trustee any net proceeds due to the Debtor as a result of the sale or the Contribution Motion. Those net proceeds will be available for distribution to the Debtor's creditors in this bankruptcy case.

Indeed, in at least one important respect, this case presents an even more compelling case for stay relief than *Robbins*. In *Robbins*, the Florida Court of Appeals reversed the trial court's ruling that Mrs. Robbins was entitled to an undivided one half interest in the stock, and ruled that she was entitled only to "the cash value of her share in the marital stock." Thus the only matter

before the special master was the valuation of the stock, in essence to establish Mrs. Robbins'

claim and the timing in which it should be paid.  Here, however, Movant owns a one-half interest

in the Property as a tenant in common which, as stated above, is not property of the estate.  Thus

Movant's interest, as co-owner of the Property, is further removed from the ordinary

debtor/creditor relationship than Mrs. Robbins' claim for payout of the value of the stock.  This

Court concludes that the Partition Action is the better forum for that pursuit to be heard.

The Debtor makes two assertions that are not controlling on the *Robbins* factors and that

could have, but were not, raised in the Partition Action.  The Debtor contends that the value of

the Property is substantially greater than the Contract price.  But the Trustee listed the Property

with a qualified agent and actively marketed it from May 2010 to January 2011.  The Property

was the subject of 12-13 showings and the Trustee reduced the listing price several times in an

effort to generate interest.  The Contract was the result of arms-length transaction between a

willing buyer and willing seller, approved by the Circuit Court.  The Contract price is, by

definition, fair market value.  It certainly is a better indication of value than the Debtor's opinion

of value or an appraisal.

The Debtor also contends that he runs his business out of the Property and will be harmed

by its sale.  But the extent to which the Property is essential to the Debtor's business is

overstated.  The Property is a five bedroom house with a living room, dining room, kitchen,

recreation room and two offices.  The Debtor uses two rooms as offices to design and bill for his

work and to fulfill office duties.  Nothing in the record suggests the Debtor could not perform

these functions in any comparable office space, nor does the record support a contention that the

Debtor must retain the entire Property in order to utilize two rooms as offices.

To the extent the Court's determination is based in equity, the equities of this case heavily favor the Movant.  Essentially, the Debtor failed to participate meaningfully in the Partition Action for no good reason.  But he had every opportunity to participate in that action directly or through an appeal.  He will not be rewarded here for his lack of participation by being allowed to cast aside the entire Partition Action.  Moreover, the Debtor has constantly interfered with the Trustee's efforts to sell the Property at every step of the way and comes to this Court with unclean hands complaining of a state court result he neither participated in nor made any effort to improve.  Under these circumstances, the Court will not exercise its discretion in favor of the Debtor.[2]

Finally, considering the pending closing on the Property, the record in the Partition Action and the equities of the case, the Court will waive the fourteen day stay of Fed. R. Bank. P. 4001(a)(3).

## CONCLUSION

For the foregoing reasons, the Court will grant the Motion and allow the parties to return to the Circuit Court for further proceedings as that court deems appropriate, including consummating the sale of the Property at issue herein and resolving the Debtor's Contribution Motion.  The Court, however, will require that the Trustee must deliver any net proceeds from the sale of the Property due to the Debtor, taking into account any resolution of the Contribution

---

[2] The Debtor also relies on *Roberge v. Roberge (In re Roberge)*, 181 B.R. 854 (Bankr. E.D. Va. 1995), *rev'd*, 188 B.R. 366 (E.D. Va. 1995), *aff'd sub nom. Roberge v. Buis,* 95 F.3d 42 (4th Cir. 1996) (unpublished table decision). The Court has reviewed *Roberge* and the subsequent history and finds that it does not support the proposition for which it is relied upon. Furthermore, the Fourth Circuit Court of Appeals, applying the *Robbins* factors, reversed the bankruptcy court and granted relief from stay to allow the debtor's spouse to pursue equitable distribution of the marital home in state court.

Motion, to the Chapter 13 trustee for administration and distribution in this bankruptcy case.

The Court will enter an order consistent with this memorandum.


**Copies to:**    Debtor
                   Debtor's Counsel
                   Movant
                   Movant's Counsel


END OF ORDER